## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

**JOSEPH F. ROUSSEL,**

      **PLAINTIFF**

   **V.**

**WILLIAM J. MAYO,**
**SCOTT WILCOX,**
**RYAN BAILEY,**
**LUCAS MURPHY, AND**
**ROBERT YOUNG,**

     **DEFENDANTS**

**Case No.:  1:22-cv-00285-JAW**

## SECOND AMENDED COMPLAINT AND
## DEMAND FOR A JURY TRIAL

NOW COMES the Plaintiff, Joseph F. Roussel and complains against the Defendants as follows:

### Introduction, Jurisdiction and Venue

1.    This is an action seeking relief for the Defendants' retaliatory conduct in violation for the First Amendment of the United States Constitution and the Maine Constitution to prevent the Plaintiff from engaging in his First Amendment rights by chilling the Plaintiff's free speech and assembly.

2.    This Court has subject matter jurisdiction over the Plaintiff's federal claims under its federal question jurisdiction, 28 U.S.C. § 1331.

3.    This Court has subject matter jurisdiction over the Plaintiff's state law claims under its supplemental jurisdiction, 28 U.S.C. § 1367.

4.    Venue is properly laid in the District of Maine under 28 U.S.C. § 1391(b)(1)-(2) because the Defendants, in their official capacity, are governmental entities in the State of Maine and in their individual capacities are citizens of the State of Maine and the substantial events or omissions giving rise to the claims occurred in the State of Maine.

## Parties

5.    Plaintiff, Joseph F. Roussel, is and at all times mentioned herein, a citizen of the United States and the State of Maine, whose address is 180 Brewer Lake Road, Orrington, ME 04474.

6.    Defendant, William J. Mayo is and at all times mentioned herein, employed as Old Town, Maine's City Manager, whose address is 265 Main Street, Old Town, Maine 04468. The City of Old Town is a municipality in the State of Maine.

7.    Defendant Mayo is a defendant in this case in his official capacity and his individual capacity.

8.    Defendant, Scott Wilcox, is and at all times mentioned herein, employed as Chief of Police of Old Town, whose address is 150 Brunswick Street, Old Town, Maine 04468. Defendant Wilcox is a defendant in this case in his official capacity and his individual capacity.

9.    Defendant, Ryan Bailey, is and at all times mentioned herein employed as Police Sergeant of Old Town, whose address is 150 Brunswick Street, Old Town, Maine, 04468. Defendant Bailey is a defendant in this case in his official capacity and his individual capacity.

10.    Defendant, Lucas Murphy, is and at all times mentioned herein, employed as a Patrol Officer of Old Town, whose address is 150 Brunswick Street, Old Town, Maine 04468. Defendant Murphy is a defendant in this case in his official capacity and his individual capacity.

11.    Defendant, Robert Young, is and at all times mentioned herein, employed the  Sheriff of Piscataquis County Maine, whose address is 52 Court Street Dover-Foxcroft, Maine 04426. Piscataquis County is a governmental unit in the State of Maine. Defendant Young is a defendant in this case in his official capacity and his individual capacity.

**Factual Background**

12.     Plaintiff intends to enjoy his free speech and assembly rights, including petitioning and educating governmental officials in their constitutional obligations under the First Amendment.

13.     Plaintiff has a reasonable, objective fear of prosecution under the Maine Criminal Code and retaliation for the exercise of his First Amendment rights.

    **A.**    **Wrongful Criminal Trespass Notice and Threated Arrest  at City Hall**

14.     On or about October 5, 2021, Plaintiff called the City of Old Town to inquire about a property he was attempting to purchase. As the COVID 19 pandemic was ongoing at the time, Plaintiff was told he needed to wear a paper mask to enter City Hall.

15.     The Plaintiff was investigating the purchase of property in Old Town and  needed certain information, wetland maps, records regarding a soil abatement, etc.

16.     Plaintiff asked if he could wear a respirator instead. The Plaintiff was transferred to the City Manager, Defendant, William Mayo. He again asked if he could wear a respirator as he had a hard time breathing with a paper mask on.

17.     Defendant Mayo began cursing and losing his temper, stating he was "tired of all of you f--ing people that don't f--ing listen" and various other unprofessional remarks.

18.    Plaintiff responded to Mayo, saying,  "I don't think you, as a public servant, should be talking to me like that and the law didn't describe what kind of face covering had to be worn, and that I was told by a doctor that a respirator was better."

19.    Plaintiff also told Defendant Mayo that he had a right to get the records he needed and that he planned to go to City Hall to do so.

20.    Each traded adult language insults toward the other. Before ending the conversation, Defendant Mayo challenged the Plaintiff  with "come on, come on, what ya got."

21.    On or about October 5, sometime after the telephone call with Defendant Mayo, a Criminal Trespass Warning was prepared by Defendants Wilcox, Bailey and Murphy at the request of Defendant Mayo for the purpose of serving as a prior restraint to Plaintiff to prevent him from engaging in his First Amendment rights.

22.    On  or about October 5,  Defendants  Bailey and Murphy issued a Criminal Trespass Warning ("CTW") concerning any appearance by the  Plaintiff at the Old Town City Hall.

23.    The Criminal Trespass Warning, which was attempted to be served on the Plaintiff by the Penobscot County Sheriff's Department, provided in pertinent part:

You are hereby directed not to enter or be on the property at the following location for any purpose:  265 Main Street, Old Town, Maine. This includes, but is not limited to, private driveways and all buildings. Any violation would result in prosecution for Criminal Trespass (17-A M.R.S.A  Section 402 – Class E crime).

Requesting Officer's Name:  R. Bailey

Property Owner's Name:  City of Old Town

24.     Plaintiff refused to accept the CTW because at the time he didn't think it was possible to trespass on public property he had never entered.

25.     Sometime after the attempted service of the Criminal Trespass Warning, Plaintiff called the Old Town Police Department and asked to speak to someone about the warning. He spoke with Defendant Bailey and questioned how he could be trespassed from somewhere he had never been, that was public property, when he had committed no crime, and where he had a right to get the property information he needed.

26.     On October 7, 2021, Plaintiff traveled to Old Town City Hall to  protest what he believed was an illegal attempt to prevent his free speech and right to redress a complaint with a governmental unit and its employees.

27.     Before he arrived at Old Town, the Plaintiff called the Old Town Police Department and advised that he intended to enter the City Hall and express his grievances.

28.    Plaintiff talked with Defendant Murphy and explained what had happened concerning the telephone call with Defendant Mayo, the CTW and his telephone call with Defendant Bailey.

29.    Defendant Murphy stated that he (Murphy) didn't think it sounded right either. Plaintiff was told by Murphy that, if what he (the Plaintiff) said was true, there was no basis for a criminal trespass charge, and he would not arrest the Plaintiff.

30.    Plaintiff told Murphy that he would stop by the Police Department to reassure them that he would not be armed and that he meant no harm or danger.

31.    When the Plaintiff arrived in Old Town, he went directly to the Old Town Police Station first to allay any concerns about his intentions and to let them inspect his truck.

32.    At the Old Town Police Department, about forty (40) feet away from the Plaintiff and the two officers he was speaking to, there was a man in black shorts and a "Parks and Rec" T-shirt, as well as a third officer, Defendant, Ryan Bailey, who watched and listened to the conversation.

33.    The Plaintiff asked in a raised voice, "if they could hear him okay, or if they needed him to speak up so they could hear him." They marched over in an aggressive way, to where the Plaintiff was talking with the other officers. Defendant Murphy said, "that's the Chief," referring to the gentleman in the shorts and a "Parks & Rec" t-shirt, Defendant Chief of Police, Scott Wilcox.

34.    Defendants Wilcox and Bailey told the Plaintiff that "if he went to City Hall he would be arrested for trespass." Plaintiff answered by saying, "If that's what I had to do to protect my rights then that is what I would do and they didn't have a legal right to trespass me from public property in the first place."

35.    After the discussion, Plaintiff decided to go to City Hall. Plaintiff spun around so the police officers could see that he wasn't armed. The Plaintiff also allowed the officers a brief visual inspection of his truck to make sure he didn't have any weapons.

36.    Plaintiff had intended on going to jail to stand up for his rights to enter public property.

37.    Plaintiff and the four police officers all walked to City Hall together – about two hundred yards.

38.    On the walk to City Hall, Plaintiff's wife called. Plaintiff told her he would need to be bailed out of Penobscot County jail later. Defendant Wilcox overheard this statement and interrupted Plaintiff's conversation, threatening him that if he was arrested, "he would make sure I went to a jail in Southern Maine where COVID was much worse."

39.    When Plaintiff arrived at the City Hall, Defendant Wilcox told him that the "building had been placed on lockdown and that all the ladies inside were scared."

40.    Officer Murphy and another police officer stood guard in the breezeway of the building, while Defendants Wilcox and Bailey stayed with the Plaintiff on the public sidewalk.

41.    Defendant Wilcox told the Plaintiff "it didn't matter if what they had done was legal because Mayo 'was the boss and he controlled the Police Department's retirement fund.'"

42.    Plaintiff  told Wilcox that the threat to take him to another jail farther away was illegal. Wilcox made the threat again concerning a Southern Maine jail.

43.    To reinforce his threat, Defendant Wilcox proceeded to tell Plaintiff how bad COVID was in southern Maine. When Plaintiff asked what jail he would be going to he said he wasn't sure and that he would have to see who had room for him and that it might take a few days to get bailed out.

44.    With this additional threat, the Plaintiff, who had family responsibilities to attend to, abandoned the exercise of his First Amendment rights.  He and the police officers walked back to the Police Department and Plaintiff left Old Town.

45.    Plaintiff observed that none of the officers were wearing masks and through the windows at City Hall, Plaintiff saw that only about half of the staff were wearing masks. At some point, Plaintiff asked Defendant Wilcox about this, and he said, "they had to be able to breathe."

46.    At this time the Center for Disease Control ("CDC") recommended masks be worn in buildings.

47.    CDC recommendations also required six-foot distancing between individuals. Defendant Wilcox violated this provision several times while he was with the Plaintiff outside of City Hall.

48.    The lockdown of the City Hall was done by the Defendants for the sole purpose of denying Plaintiff entry and denying him the opportunity to present his grievances to public officials.

49.    City Hall had been placed on lockdown and Plaintiff was refused entry. The Plaintiff stood out in front of City Hall for over an hour talking with Defendants Wilcox, Bailey, and Murphy, and a fourth unidentified officer.

50.    Defendants  Wilcox, Bailey, and Murphy threatened to arrest the Plantiff. When that didn't work, Wilcox threatened to not take Plaintiff to the Penobscot County Jail, but somewhere in Southern Maine, where COVID was much worse than in his area. The Plaintiff eventually left as this threat was enough.

51.    Defendant Wilcox claimed that the Plaintiff didn't have the right to go to his City Hall because he doesn't live in Old Town, or own property in Old Town.

52.    Plaintiff never received a lawful order not to enter City Hall and never received a lawful order to leave the public property.  Plaintiff left the area of Old Town City Hall only because he was unlawfully threatened with arrest.

53.    At no time did the Plaintiff engage in language that was egregiously offensive to be considered "fighting words."

54.    At no time did Plaintiff engage in speech or conduct that presented a clear and present danger to others.

55.    At no time did Plaintiff engage in conduct that could be prohibited under the Criminal Trespass statute, 17-A M.R.S. § 402.

56.    The City of Old Town does not have an ordinance addressing the time, place, or manner, which prohibited Plaintiff's conduct or speech, or entry into City Hall.

57.    The Plaintiff stood on the public sidewalk at all times while in front of the Old Town City Hall.

58.    During the time Plaintiff was outside of City Hall, he was not engaged in any threatening or disruptive speech or conduct in front of City Hall.

59.    Defendants Wilcox, Bailey and Murphy had reason to know a violation of Plaintiff's constitutional rights was taking place in the nature of the targeted lockdown of City Hall and the issuance of the Criminal Trespass Notice.

60.    Defendants Wilcox, Bailey and Murphy failed to intervene to protect Plaintiff's Constitutional rights from being infringed.

**B.    Wrongful Cease Harassment Notice at Lakeview Plantation**

61.    On June 25, 2022, Plaintiff was on a boat on Schoodic Lake, in Lakeview Plantation, Maine,  with friends and family members  enjoying the weather. One of the other boaters pointed out that the City Manager of Old Town lived in one of the homes they were passing by.

62.    The Plaintiff yelled to Defendant Mayo from the water, using some adult language: "F*** you! Try trespassing me from here you tyrant piece of sh**."

63.    On July 3, 2022, at approximately 3:00 PM, Plaintiff drove from Orrington to have dinner with friends, who are members of the East Shore Lake Association, an area of land surrounding Schoodic Lake.

64.    Plaintiff prepared signs directed toward Defendant Mayo and what he believed to be Mayo's wrongful actions in denying the Plaintiff his First Amendment rights in October 2021.  Plaintiff intended to place the signs along two public roadsides.

65.    After Plaintiff left his friends' home that evening, he put up six signs in four different places:  two on Hancock Road and two on the Railroad Bed Road.

66.    The purpose of the signs was to protest Defendant Mayo's violation of the Plaintiff's constitutional rights.

67.    Plaintiff posted signs on the entrance to the Hancock Road – one halfway over to the Railroad Bed Road and two on Versant power poles on the Railroad Bed Road.

68.    Railroad Bed Road in Lakeview Plantation, Maine, is open and available for use by the public and not posted as private property.

69.    Hancock Road in Lakeview Plantation, Maine, is open and available for use by the public and not posted as private property.

70.    Some of the signs posted by the Plaintiff did contain adult language.

71.    The Plaintiff's verbal statements in June 2022 and signs placed in July 2022 were directed at Defendant Mayo for his role as a governmental employee engaged in conduct to deny the Plaintiff access to Old Town City Hall on October 7, 2021, and denying Plaintiff's First Amendment rights.

72.    None of the signs posted by the Plaintiff, which contained adult language, was intended to cause a violent reaction and was integral to the Plaintiff's expression of the denial of his constitutional rights.

73.    The use of adult language in the signs posted or the statements Plaintiff made from the boat on June 25 was not intended to contain a threat of bodily harm against Defendant Mayo or intended to be fighting words to provoke a violent response.

74.    Plaintiff was not physically present within 1,200 feet of Defendant Mayo's home during the posting of the signs and did not intend to do so.

75.    Plaintiff used trees and telephone poles to place his signs. One of the trees used  to post the signs already had holes in it from previous signs that were no

13

longer there. A telephone pole Plaintiff used had one hole already and the other screw went into a pre-existing crack. All but one place Plaintiff put his signs currently had or had in the past some sort of sign.

76.    Lakeview Plantation does not have an ordinance which governs the time, place and manner of Plaintiff's speech, signage, or conduct.

77.    On July 15, 2022, Defendant Mayo sent Plaintiff an email using his governmental email address, OldTown.org, acting under color of law, seeking to use his governmental position to chill the Plaintiff's First Amendment rights and reinforce his position as a governmental employee.

78.    Defendant Mayo sent copies of the July 15th OldTown.org email to Defendants Wilcox and Young for the express purpose of seeking action by his fellow governmental employees.

79.    Defendant Mayo erroneously claimed in his email that Railroad Bed Road in Lakeview Plantation was a private road and Plaintiff had no right to post signs.

80.    In his July 15th email, Defendant Mayo used his governmental position to  threaten retaliation against the Plaintiff by taking actions against the Plaintiff's business as a medical marijuana provider with enforcement of the Maine Trespass and Harassment laws.

81.    Defendant Mayo used his position as a government official to chill the Plaintiff's speech because he found the same to be immoral or inappropriate, or otherwise objectionable.

82.    On or about July 15, 2022, Plaintiff was served by Defendant Piscataquis County Sheriff Robert Young with a Cease Harassment Notice ("CHN").

83.    The CHN was written by Defendant Mayo and Defendant Young and constituted a prior restraint of Plaintiff's right to access public property and his First Amendment rights.

84.    The CHN served by Defendants Young and Mayo was in retaliation against the Plaintiff exercising his First Amendment constitutional rights.

The CHN provided in pertinent part:

To Joseph Roussel, 180 Brewer Road, Orrington, Maine.

You are forbidden from engaging, without reasonable cause, in any course of conduct with the intent to harass, torment or threaten the following person:

William Bill Mayo. Signed by:  Robert Young, Sheriff, Piscataquis County Sheriff's Dept. This notice is effective immediately and remains in effect for one year from the date of issuance. Your failure to abide by this notice may result in your being charged with the crime of Harassment.

85.    Defendant Young told the Plaintiff that his justification for issuing the Cease Harassment Notice was that he considers what the people who go to his church think when he enforces the law, not the First Amendment.

15

86.     Plaintiff did not engage in any conduct against Defendant Mayo that would constitute a violation of the crime of Harassment, 17-A M.R.S. § 506-A.

87.     Defendant Young also claimed that Plaintiff was trespassing by virtue of traveling on the Railroad Bed Road and that he would enforce the CHN if Plaintiff went back to the area. Plaintiff told Young that Mayo didn't own the road and Young replied that he didn't care.

88.     Plaintiff told Defendant Young he would give him thirty (30) days to remove the illegal warning. Approximately 30 days later, Plaintiff called Defendant Young again. Plaintiff informed the Defendant Sheriff Young that if he didn't remove the CHN, he would be forced to take legal action.

89.     Defendant Young insisted that he was correct in his actions. Plaintiff advised Defendant Young that he fully intended to go out there with more signs to protest what he sees as a constitutionally protected right.

90.     The Plaintiff has a fundamental constitutional right to freedom of speech and freedom of assembly to redress concerns to public officials.

91.     The trespassing warning prohibiting the Plaintiff from accessing this public property to redress public officials constitutes an infringement on the Plaintiff's fundamental constitutional rights and continues to chill the Plaintiff's exercise of his First and Fourteenth Amendments of the United States Constitution.

92.    Defendant Young was engaged in enforcing the law as interpreted by the members of his church, not by the language and meaning of the First Amendment.

93.    Defendant Young had reason to know he was engaged in a violation of Plaintiff's constitutional rights by prohibiting Plaintiff from posting signs in areas of public access and by his threats to arrest the Plaintiff for engaging in his constitutional rights.

94.    The actions engaged in by all the Defendants constitute an infringement on the fundamental constitutional rights of the Plaintiff without cause and warrants the instant action for economic and non-economic relief namely in the form of injunctive relief negating the unlawful prohibition on the Plaintiff from exercising their fundamental constitutional rights.

95.    As a direct and proximate cause of the misconduct complained of, the Plaintiff suffered economic and non-economic damages amounting to the relief sought in the instant action as described herein.

96.    The Plaintiff is seeking compensatory and punitive damages for each of the causes of action described herein in an amount to be determined in a trial by jury, as well as all other relief deemed necessary and applicable.

**Count I:  42 U.S.C. § 1983 (First Amendment Violations)**

97.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 to 96, as if they are fully set forth here.

98.    The First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment provides, in relevant part, "Congress shall make no law . . . abridging the freedom of speech . . . or the right of people to peacefully assemble[.]"

99.    It is a guiding principle of the First Amendment that the government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *McCullen v Coakley*, 573 U.S. 464, 477 (2014) (internal quotations and citation omitted).

100.    The First Amendment protects a peaceful gathering of people for any lawful purpose. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 483 (1965).

101.    At all relevant times, the Plaintiff was engaged in his First Amendment rights of freedom of speech and peaceful assembly.

102.    The  right of freedom of speech, the right to peacefully assemble, and right to address grievances to the government are clearly established in American jurisprudence.

103.    The conduct of the Defendants, who were at all times acting under color of law, abridged the Plaintiff's rights to freedom of speech, to peacefully assemble, and to address grievances to the government.

18

**Count II**:  **42 U.S.C. § 1983 (Retaliation for First Amendment Exercise)**

104.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 to 103 as if they are fully set forth here.

105.    At all relevant times, the Plaintiff was engaged in his First Amendment rights of freedom of speech and peaceful assembly.

106.    The  Plaintiff's right to be free from retaliation because of the exercise of his rights of freedom of speech, the right to peacefully assemble, and right to address grievances to the government is clearly established in American jurisprudence.

107.    The conduct of the Defendants was an adverse action intended to constitute retaliation against the Plaintiff for the exercise of his First Amendment rights and chill the exercise of his constitutional rights in the future.

**Count III**:  **14 M.R.S. § 4682(1-A) (Maine Constitution Art. I Section 4)**

108.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 to 107 as if they are fully set forth here.

109.    The Maine Constitution, Art. I, Section 4,  provides, in pertinent part, "[e]very citizen may freely speak, write and publish his sentiments on any subject[.]"

110.    A violation of the Maine Constitution is actionable by 14 M.R.S. § 4682(1-A).

111.    The Plaintiff was engaged in freedom of speech activities entitled to protection under the Maine Constitution. *Central Maine Power v. Public Utilities Commission,* 1999 ME 199, ¶ 8, 734 A.2d 1120, 1125 (Me. 1999).

112.    The Plaintiff's right to receive information is a proper component of the concept of free speech under the Maine Constitution. *Brophy v. Town of Castine*, 534 A.2d 663, 664 (Me. 1987).

113.    The  right of freedom of speech, the right to peacefully assemble, and right to address grievances to the government are clearly established in Maine jurisprudence.

114.    At all relevant times, the Plaintiff was engaged in his Maine constitutional rights of freedom of speech and peaceful assembly.

115.    The conduct of the Defendants violated Plaintiff's rights under Article I Section 4 of the Maine Constitution.

**<u>Count IV</u>:  14 M.R.S. § 4682(1-A) (Maine Constitution Retaliation)**

116.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 to 115 as if they are fully set forth here.

117.    At all relevant times, the Plaintiff was engaged in his First Amendment rights of freedom of speech and peaceful assembly as guaranteed by Article I, Section 4 of the Maine Constitution.

118.   The Plaintiff's right to be free from retaliation because of the exercise of his rights under the Maine Constitution is clearly established.

119.   The conduct of the Defendants constituted retaliation for the Plaintiff's exercise of his rights under the Maine Constitution.

### <u>Count V</u>:  Punitive Damages (Federal and State Claims)

120.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 to 119 as if they are fully set forth here.

121.   The Defendants, in their individual capacities, violated the Plaintiff's rights under the United States Constitution and the Maine Constitution in a manner that was reckless, wanton, and willful, motivated by evil motive or intent, and with demonstrated actual or implied malice.

### <u>Prayer for Relief</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Enter judgment in Plaintiff's favor and declare that the actions of the Defendants violate the First and Fourteenth Amendments to the Constitution and Article I, Section 4 of the Maine Constitution;

B.    Permanently enjoin the Defendants from interfering with Plaintiff's First Amendment right of free speech and from retaliating against the Plaintiff for exercising his First Amendment rights;

C.     Award Plaintiff actual and punitive damages in an amount to be determined at trial;

D.     Award Plaintiff his attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

E.     Grant such further relief as the Court deems appropriate.

## **Demand for Jury Trial**

Plaintiff demands a jury trial on all counts so triable.

**Dated:** August 11, 2023     _/s/ Michael E. Saucier_
                              **Michael E. Saucier, Esq. (Maine Bar No. 353)**
                              Attorney for Plaintiff

**LIBBY O'BRIEN KINGSLEY & CHAMPION, LLC**
62 Portland Road, Suite 17
Kennebunk, ME  04043
(207) 985-1815
msaucier@lokllc.com

## **CERTIFICATE OF SERVICE**

I, Michael E. Saucier, hereby certify that on August 11, 2023, I electronically filed the ***Second Amended Complaint and Demand for a Jury Trial*** with the Clerk of the Court using the CM/ECF system which caused a copy of this document be served electronically on all registered counsel of record:

Frederick F. Costlow, Esq.
Richardson, Whitman, Large & Badger
P. O. Box 2429
One Merchants Plaza, Suite 603
Bangor, ME  04401-2429
TEL:  945-5900
EMAIL:  fcostlow@rwlb.com

Michael D. Lichtenstein. Esq.
Wheeler & Arey, P.A.
27 Temple Street
Waterville, ME  04901
EMAIL:  michael@wheelerlegal.com

Peter T. Marchesi, Esq.
Wheeler & Arey, P.A.
27 Temple Street
Waterville, ME  04901
EMAIL:  peter@wheelerlegal.com

**Dated:** August 11, 2023          */s/ Michael E. Saucier* _____
                                    **Michael E. Saucier, Esq. (Maine Bar No. 353)**
                                    Attorney for Plaintiff

**LIBBY O'BRIEN KINGSLEY & CHAMPION, LLC**
62 Portland Road, Suite 17
Kennebunk, ME  04043
(207) 985-1815
msaucier@lokllc.com