UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH F. ROUSSEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00285-JAW |
| | ) | |
| WILLIAM MAYO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANT ROBERT YOUNG'S
MOTION TO DISMISS COMPLAINT**

The plaintiff in this case claims that he was engaging in protected speech against a municipal official when a sheriff acting in cahoots with the official served a cease harassment notice on him, potentially subjecting him to criminal prosecution if he continued to speak. The Court dismisses without prejudice the sheriff's motion to dismiss because the allegations in the complaint are sufficient to raise a factual question as to whether the speech was protected.

**I.   BACKGROUND**

On September 12, 2022, Joseph Roussel, acting pro se, filed a complaint pursuant to 42 U.S.C. § 1983 against William Mayo, the town manager of the town of Old Town, Maine; Scott Wilcox, the Chief of Police of Old Town; Ryan Bailey, a Sergeant with the Old Town Police Department; and Lucas Murphy, a patrol officer with the Old Town Police Department (collectively the Old Town Defendants). *Compl.* (ECF No. 1). Mr. Roussel alleged that the Old Town Defendants violated his First Amendment rights to free speech and assembly by issuing a trespass warning

prohibiting his access to public property in retaliation for his engaging in free speech. *Id.* at 1-7.

The Old Town Defendants moved to dismiss the complaint or for judgment on the pleadings. *Defs. William Mayo, Scott Wilcox, Ryan Bailey and Lucas Murphy's Jt. Mot. to Dismiss and/or J. on the Pleadings Pursuant to F. R. Civ. P. Rule 12(b)(6)* (ECF No. 6). On November 30, 2022, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant the motion to dismiss. *Recommended Decision on Defs.' Mot. to Dismiss* (ECF No. 9). On December 7, 2022, Mr. Roussel objected to the recommended decision and moved to amend his complaint. *Objs. to R & R* (ECF No. 10); *Mot. to Am. Compl.* (ECF No. 14). The Court granted Mr. Roussel's motion to amend his complaint on January 20, 2023, *Order on Mot. to Am. Compl.* (ECF No. 19), dismissed as moot the Old Town Defendants' motion to dismiss the complaint on February 8, 2023, *Order Dismissing as Moot Mot. to Dismiss for Failure to State a Cl. and Report and Recommended Decision* (ECF No. 21), and dismissed Mr. Roussel's objection to the recommended decision on February 10, 2023. *Order Dismissing Obj. to Recommended Decision* (ECF No. 24).

Based on these rulings, the operative complaint became Mr. Roussel's proposed amended complaint filed on December 19, 2022. *Am. Compl.* (ECF No. 13). On February 6, 2023, the Old Town Defendants moved to dismiss Mr. Roussel's amended complaint. *Defs. William Mayo, Scott Wilcox, Ryan Bailey and Lucas Murphy's Jt. Mot. to Dismiss Pl. Roussel's Am. Compl., ECF Doc. No. 13 Pursuant to F. R. Civ. P. Rule 12(b)(6)* (ECF No. 20).

On June 5, 2023, Attorney Michael Saucier entered his appearance on behalf of Mr. Roussel. *Notice of Appearance* (ECF No. 31). On the same day, Mr. Roussel—through Attorney Saucier—filed a motion to amend the complaint to add a party defendant. *Mot. to Am. Compl. and Add a Party Def.* (ECF No. 32). The proposed additional defendant was Robert Young, the Sheriff of Piscataquis County. *See id.*, Attach. 1, *Second Am. Compl.* On August 7, 2023, the Magistrate Judge granted Mr. Roussel's motion to amend complaint, *Order* (ECF No. 41), and the Second Amended Complaint became the operative complaint. *Second Am. Compl.* (ECF No. 42) (*Second Am. Compl.*).

On September 1, 2023, Sheriff Young moved to dismiss the second amended complaint for failure to state a claim. *Def. Robert Young's Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF No. 45) (*Young Mot. to Dismiss*). On September 22, 2024, Mr. Roussel responded. *Pl.'s Obj. to Def. Robert Young's Mot. to Dismiss Pl.'s Second Am. Compl.* (ECF No. 48) (*Pl.'s Opp'n*). On October 2, 2023, Mr. Young replied. *Def. Robert Young's Reply Br. in Support of his Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF No. 45) (*Young Reply*).

## II. THE SECOND AMENDED COMPLAINT'S ALLEGATIONS AGAINST ROBERT YOUNG

### A. Introduction

Mr. Roussel states that this civil action seeks "relief for the Defendants' retaliatory conduct in violation [of] the First Amendment of the United States Constitution and the Maine Constitution to prevent the Plaintiff from engaging in

3

his First Amendment rights by chilling the Plaintiff's free speech and assembly." *Second Am. Compl.* ¶ 1. After identifying himself and the Old Town Defendants and their municipal positions, *id.* ¶¶ 5-10, Mr. Roussel says that Robert Young is the Sheriff of Piscataquis County, Maine and clarifies that Mr. Roussel is bringing the lawsuit against Sheriff Young in his official and individual capacities. *Id.* ¶ 11.

**B.    October 5, 2021 Telephone Conversation: City Manager Mayo and Joseph F. Roussel**

By way of background, Mr. Roussel alleges that on or about October 5, 2021, he called the City of Old Town to inquire about some property he was attempting to purchase within Old Town. *Id.* ¶ 14. Mr. Roussel needed information, such as wetland maps, soil abatement records, to investigate the contemplated purchase. *Id.* ¶ 15. As the COVID 19 pandemic was ongoing, Mr. Roussel was told that he needed to wear a paper mask to enter City Hall. *Id.* ¶ 14. Mr. Roussel asked if he could wear a respirator instead of a mask and his call was transferred to City Manager William Mayo, and Mr. Roussel posed his question to Manager Mayo, noting that he had a hard time breathing with a paper mask on. *Id.* ¶ 16. Mr. Roussel says that Manager Mayo "began cursing and losing his temper, stating that he was 'tired of all of you f—ing people that don't f—ing listen' and various other unprofessional remarks." *Id.* ¶ 17. Mr. Roussel replied: "I don't think you, as a public servant, should be talking to me like that and the law didn't describe what kind of face covering had to be worn, and I was told by a doctor that a respirator was better." *Id.* ¶ 18. Mr. Roussel also told Manager Mayo that he had a right to get city records and he planned to go to Old Town City Hall to do so. *Id.* ¶ 19. Mr. Roussel then says that "[e]ach traded adult

4

language insults toward the other" and before the call ended, Manager Mayo "challenged the Plaintiff with 'come on, come on, what ya got.'" *Id.* ¶ 20.

### C.    Chief Wilcox, Sergeant Bailey, Officer Murphy, and the Criminal Trespass Warning

Sometime after the October 5, 2021 telephone call, at Manager Mayo's request, Chief Wilcox, Sergeant Bailey, and Officer Murphy prepared a criminal trespass warning to serve as a prior restraint to prevent Mr. Roussel from engaging in his First Amendment rights. *Id.* ¶ 21. On October 5, 2021, Sergeant Bailey and Officer Murphy issued a criminal trespass warning concerning any appearance by Mr. Roussel at Old Town City Hall. *Id.* ¶ 22. The Penobscot County Sheriff's Department attempted to serve the criminal trespass warning on Mr. Roussel, which provided in part:

> You are hereby directed not to enter or be on the property at the following location for any purpose: 265 Main Street, Old Town, Maine. This includes, but is not limited to, private driveways and all buildings. Any violation would result in prosecution for Criminal Trespass (17-A M.R.S.A. Section 402 – Class E crime).
>
> Requesting Officer's Name: R. Bailey
>
> Property Owner's Name: City of Old Town

*Id.* ¶ 23. Mr. Roussel refused to accept the criminal trespass warning because he did not think it was possible to trespass on public property he had never entered. *Id.* ¶ 24.

Sometime after the attempted service of the criminal trespass warning, Mr. Roussel called the Old Town Police Department and asked to speak to someone about the warning. *Id.* ¶ 25. Mr. Roussel spoke with Sergeant Bailey and questioned how

he could trespass on property he had never entered and told Sergeant Bailey that the City Hall was public property, that he had committed no crime, and that he had a right to obtain property information. *Id.*

### D.   Joseph F. Roussel's October 7, 2021 City Hall Protest

On October 7, 2021, Mr. Roussel traveled to Old Town City Hall to protest what he believed was an illegal attempt to prevent his free speech and right to redress a complaint with a governmental unit and its employees. *Id.* ¶ 26.  Before he arrived at Old Town, Mr. Roussel called the Old Town Police Department and advised them that he intended to enter City Hall and express his grievances. *Id.* ¶ 27.  Mr. Roussel talked with Officer Murphy and explained what had happened concerning his telephone call with Manager Mayo, the criminal trespass warning, and his telephone call with Sergeant Bailey. *Id.* ¶ 28.  Officer Murphy responded that it did not sound right, and he said to Mr. Roussel that, if what Mr. Roussel said was true, there was no basis for a criminal trespass charge, and he would not arrest Mr. Roussel. *Id.* ¶ 29.  Mr. Roussel told Officer Murphy that he would stop by the Old Town Police Department to assure them he was not armed and meant no harm or danger. *Id.* ¶ 30.

When Mr. Roussel arrived in Old Town on October 7, 2021, he went directly to the Old Town Police Department to allay any concerns about his intentions and let them inspect his truck. *Id.* ¶ 31.  At the Old Town Police Department, about forty feet away from Mr. Roussel and the two officers he was speaking with, was a man in black shorts and a "Parks and Rec" t-shirt and a third officer, Sergeant Bailey, who

6

watched and listened to the conversation. *Id.* ¶ 32. Mr. Roussel asked in a raised voice whether "they could hear him okay, or if they needed him to speak up so they could hear him." *Id.* ¶ 33. The two men marched over to him in an aggressive way, and Officer Murphy said, "that's the Chief," referring to the man in the black shorts. *Id.* ¶ 33.

Chief Wilcox and Sergeant Bailey told Mr. Roussel that "if he went to City Hall, he would be arrested for trespass." *Id.* ¶ 34. Mr. Roussel answered, "If that's what I [have] to do to protect my rights, then that is what I [will] do, and they didn't have a legal right to trespass me from public property in the first place." *Id.* After the discussion, Mr. Roussel decided to go to City Hall. *Id.* ¶ 35. Mr. Roussel spun around so that the officers could see he was not armed and allowed a brief inspection of his truck so that they could confirm he did not have any weapons. *Id.* Mr. Roussel intended to go to jail to stand up for his right to enter public property. *Id.* ¶ 36.

Mr. Roussel and the four police officers all walked to City Hall together—about two hundred yards. *Id.* ¶ 37. On the walk to City Hall, Mr. Roussel's wife called, and Mr. Roussel told her that he would need to be bailed out of the Penobscot County Jail. *Id.* ¶ 38. Chief Wilcox overheard this statement and interrupted Mr. Roussel's conversation, threatening that if he were arrested, "he would make sure I went to jail in southern Maine where COVID was much worse." *Id.*

When Mr. Roussel arrived at City Hall, Chief Wilcox told him that the "building had been placed on lockdown and that all the ladies inside were scared." *Id.* ¶ 39. Officer Murphy and another police officer stood guard in the breezeway of

the building, while Chief Wilcox and Sergeant Bailey stayed with Mr. Roussel on the public sidewalk. *Id.* ¶ 40. Chief Wilcox told Mr. Roussel "it didn't matter if what they had done was legal because [Manager] Mayo 'was the boss and he controlled the Police Department's retirement fund.'" *Id.* ¶ 41. Mr. Roussel told Chief Wilcox that the threat to take him to another jail farther away was illegal, and Chief Wilcox repeated the threat. *Id.* ¶ 42. To reinforce his threat, Chief Wilcox told Mr. Roussel how bad COVID was in southern Maine, and when Mr. Roussel asked what jail he would be sent to, Chief Wilcox said he was not sure, that he would have to see who had room for Mr. Roussel, and it might take a few days to bail him out. *Id.* ¶ 43. With this additional threat, Mr. Roussel, who had family responsibilities, abandoned the exercise of his First Amendment rights, and he and the officers returned to the Old Town Police Department. *Id.* ¶ 44. Mr. Roussel left Old Town. *Id.*

Mr. Roussel observed that none of the officers was wearing a mask and through the windows at City Hall, Mr. Roussel saw that only about one-half of the city employees was wearing a mask. *Id.* ¶ 45. Mr. Roussel asked Chief Wilcox about this, and Chief Wilcox replied, "they had to be able to breathe." *Id.* At this time, the Center for Disease Control (CDC) recommended masks be worn in buildings. *Id.* ¶ 46. CDC recommendations also required six-foot distancing between individuals, *id.* ¶ 47, and Chief Wilcox violated this provision several times while he was with Mr. Roussel outside City Hall. *Id.*

Manager Mayo, Chief Wilcox, Sergeant Bailey, and Officer Murphy locked down City Hall for the sole purpose of denying Mr. Roussel entry and the opportunity

to present his grievances to public officials. *Id.* ¶ 48. City Hall had been placed in lockdown and Mr. Roussel was refused entry. *Id.* ¶ 49. Mr. Roussel stood in front of City Hall for over an hour talking with Chief Wilcox, Sergeant Bailey, and Officer Murphy as well as a fourth unidentified officer. *Id.* Chief Wilcox claimed that Mr. Roussel did not have the right to enter City Hall because he did not live or own property in Old Town. *Id.* ¶ 51. Mr. Roussel never received a lawful order not to enter City Hall or to leave public property, and he left the area of Old Town City Hall only because he was unlawfully threatened with arrest. *Id.* ¶ 52.

### E.      The June 25, 2022 Schoodic Lake Incident

On June 25, 2022, Mr. Roussel was on a boat on Schoodic Lake in Lakeview Plantation, Maine with friends and family. *Id.* ¶ 61. One of the other boaters pointed out that Manager Mayo lived in one of the homes they were passing. *Id.* Mr. Roussel yelled to Manager Mayo from the water, using adult language: "F*** you! Try trespassing me from here you tyrant piece of sh**." *Id.* ¶ 62.

### F.      The July 3, 2022 Sign Posting

On July 3, 2022 at about 3:00 p.m., Mr. Roussel drove from Orrington, Maine to the Schoodic Lake area to have dinner with friends. *Id.* ¶ 63. His friends are members of the East Shore Lake Association, an area of land surrounding Schoodic Lake. *Id.* Mr. Roussel prepared signs directed toward Manager Mayo and what Mr. Roussel believed were Manager Mayo's wrongful actions in denying Mr. Roussel his First Amendment rights in October 2021. *Id.* ¶ 64. Mr. Roussel intended to place these signs along two public roadsides. *Id.* After Mr. Roussel left his friends' home

that evening, he put up six signs in four different places: two on Hancock Road and two on Railroad Bed Road. *Id.* ¶ 65. Mr. Roussel's purpose in posting the signs was to protest Manager Mayo's alleged violation of his constitutional rights. *Id.* ¶ 66. Mr. Roussel posted these signs on the entrance to the Hancock Road—one halfway over to the Railroad Bed Road and two on Versant power poles on the Railroad Bed Road. *Id.* ¶ 67. Railroad Bed Road and Hancock Road in Lakeview Plantation, Maine are not posted as private property and are open and available for use by the public. *Id.* ¶¶ 68-69.

Some of the signs Mr. Roussel posted contained adult language. *Id.* ¶ 70. Mr. Roussel's language in June and July was directed at Manager Mayo for his role as a governmental employee when Manager Mayo denied Mr. Roussel access to the Old Town City Hall on October 7, 20921 and denied Mr. Roussel his First Amendment rights. *Id.* ¶ 71. Mr. Roussel did not intend any of the signs, including their adult language, to cause a violent reaction, and he considered the language integral to his protest of the denial of his constitutional rights. *Id.* ¶ 72. Also, Mr. Roussel did not intend his use of adult language to constitute a threat of bodily harm to Manager Mayo or to be fighting words to provoke a violent response. *Id.* ¶ 73.

Mr. Roussel was not physically within 1,200 feet of Manager Mayo's home when he posted the signs, and he used trees and telephone poles to place his signs. *Id.* ¶¶ 74-75. These trees and telephone poles already had holes in them from previous signs that were no longer there. *Id.* ¶ 75. All but one place where Mr. Roussel placed his signs had evidence of prior postings. *Id.* Lakeview Plantation

10

does not have an ordinance that governs the time, place, and manner of Mr. Roussel's speech, signage, or conduct. *Id.* ¶ 76.

### G.    Manager Mayo's July 15, 2022 Email to Joseph F. Roussel

On July 15, 2022, Manager Mayo, acting under color of law, sent Mr. Roussel an email using his governmental OldTown.org email address, seeking to use his governmental position to chill Mr. Roussel's First Amendment rights and reinforce his position as a governmental employee. *Id.* ¶ 77.  Manager Mayo sent copies of his July 15, 2022 email to Chief Wilcox and Sheriff Young for the express purpose of seeking action by his fellow governmental employees. *Id.* ¶ 78.  In his July 15, 2022 email, Manager Mayo erroneously claimed that Railroad Bed Road in Lakeview Plantation was a private road and that Mr. Roussel had no right to post signs there, *id.* ¶ 79, and used his governmental position to threaten retaliation against Mr. Roussel through enforcement of the Maine Trespass and Harassment laws against Mr. Roussel's business as a medical marijuana provider. *Id.* ¶ 80.  Mr. Roussel alleges that Manager Mayo used his position as a government official to chill Mr. Roussel's speech because Manager Mayo found it immoral, inappropriate, or otherwise objectionable. *Id.* ¶ 81.

### H.    Sheriff Young Serves Joseph F. Roussel with a Cease Harassment Notice on July 15, 2022

On or about July 15, 2022, Sheriff Young served Mr. Roussel with a Cease Harassment Notice, *id.* ¶ 82, that Manager Mayo and Sheriff Young had written. *Id.* ¶ 83.  Mr. Roussel alleges that the Cease Harassment Notice was in retaliation against Mr. Roussel for exercising his First Amendment rights and constituted a prior

restraint of his right to access public property and his First Amendment rights. *Id.*

¶¶ 83-84. The Cease Harassment Notice provided in part:

> To Joseph Roussel, [address redacted], Orrington, Maine.
>
> You are forbidden from engaging, without reasonable cause, in any course of conduct with the intent to harass, torment or threaten the following person:
>
> William Bill Mayo. Signed by: Robert Young, Sheriff, Piscataquis County Sheriff's Department. This notice is effective immediately and remains in effect for one year from the date of issuance. Your failure to abide by this notice may result in your being charged with the crime of Harassment.

*Id.* ¶ 84. Sheriff Young told Mr. Roussel that his justification for issuing the Cease Harassment Notice was that he considers what the people who go to his church think when he enforces the law, not the First Amendment. *Id.* ¶ 85.

Sheriff Young also said that Mr. Roussel was trespassing by virtue of traveling on the Railroad Bed Road and that he would enforce the Cease Harassment Notice if Mr. Roussel went back to the area. *Id.* ¶ 87. Mr. Roussel told Sheriff Young that Manager Mayo did not own the road and Sheriff Young replied that he did not care. *Id.*

Mr. Roussel told Sheriff Young that he would give him thirty days to remove the illegal warning, and about thirty days later, Mr. Roussel called Sheriff Young again, and informed Sheriff Young that if he did not remove the Cease Harassment Notice, Mr. Roussel would be forced to take legal action. *Id.* ¶ 88. Sheriff Young insisted that he was correct in his actions, and Mr. Roussel advised Sheriff Young

that he fully intended to post more signs to protest the infringement of his constitutional rights. *Id.* ¶ 89.

## III.   THE POSITIONS OF THE PARTIES

### A.   Sheriff Young's Motion

Asserting that "[m]ost of [Mr. Roussel's] Complaint consists of the sort of 'legal conclusions couched as fact' and 'threadbare recitals of the elements of a cause of action," *Young Mot. to Dismiss* at 4 (quoting *Occasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)) (quotations omitted), Sheriff Young says that "courts disregard these allegations when deciding on a motion to dismiss for failure to state a claim." *Id.* Sheriff Young argues that the "few facts contained in Roussel's Complaint which are not conclusory fall short of stating a claim for a constitutional violation under 42 U.S.C. § 1983." *Id.*

Sheriff Young first makes the point that Manager Mayo is not alleged to have been a state official, *id.* at 4, nor a local official for the town of Lakeview Plantation in Piscataquis County. *Id.* Instead, Manager Mayo is alleged to have been a municipal official in a city in a Penobscot County, a county adjoining the area where the Lakeview Plantation incidents are alleged to have taken place. *Id.* Thus, in Sheriff Young's view, Manager Mayo is only "a private citizen seeking to stop another private citizen from aiming obscenities at him at his home." *Id.*

Sheriff Young says that Mr. Roussel's allegations "fall well short of any constitutional violation." *Id.* at 5 (quoting *Burrell v. Bd. of Trs. of the Univ. of Me. Sys.*, No. 99-107-P-C, 2000 U.S. Dist. LEXIS 2412 (D. Me. Feb. 1, 2000), *aff'd* 2000

U.S. Dist. LEXIS 10925 (D.N.H. Jul. 25, 2000), *aff'd* 15 Fed. App'x 5 (1st Cir. 2001), Sheriff Young says that a cease and desist notice is not evidence of a violation of a constitutional right. *Id.* Sheriff Young points out that under Maine law, a cease and desist notice is only a notice, not a conviction without trial. *Id.* Moreover, Sheriff Young notes, neither harassment nor lewd and obscene language is protected by the First Amendment. *Id.* at 5-6.

Sheriff Young thus concludes that Mr. Roussel's complaint must be dismissed. *Id.* at 6.

### B.     Joseph F. Roussel's Opposition

In his opposition, Mr. Roussel contends that the facts in the amended complaint support his view that Sheriff Young was involved in "chilling and retaliating against [him] for his First Amendment expression in Lakeview Plantation." *Pl.'s Opp'n* at 1. After reviewing the facts in the complaint, Mr. Roussel says that Sheriff Young eliminated facts from his analysis and ignored "facts supporting Young's constitutional violations of the Plaintiff's First Amendment rights." *Id.* at 7. Mr. Roussel argues that after he placed the signs in Lakeview Plantation, Manager Mayo "engag[ed] the Plaintiff in his governmental capacity by using his City email address and soliciting law enforcement officers in his quest to both chill and retaliate against the Plaintiff." *Id.* Mr. Roussel points out that Sheriff Young is "clearly a governmental actor for purposes of section 1983 liability" and "is individually liable for his own actions and inactions here." *Id.* at 8.

Mr. Roussel argues that he is entitled to use public space to exercise his First Amendment rights. *Id.* at 8-10. Relying on *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983) and its progeny, Mr. Roussel maintains that he was entitled to use a public roadway to exercise his First Amendment rights. *Id.*

Mr. Roussel next contends that his communications to Manager Mayo fall within the speech protections of the First Amendment, and he stresses that this is true even though he used vulgar language. *Id.* at 10-12.

Finally, Mr. Roussel sets forth the standards for a retaliation claim under 42 U.S.C. § 1983, noting that he must prove that his "conduct was constitutionally protected" and "was a 'substantial' or 'motivating' factor for the retaliation." *Id.* at 13 (citing *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004)), and that there was no probable cause for the criminal charge. *Id.* (citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006)). Mr. Roussel argues that there was no probable cause for the issuance of the cease harassment notice because he had a right to express his displeasure at his treatment by Manager Mayo in October 2021. *Id.* at 14-15.

## C.  Sheriff Young's Reply

Sheriff Young maintains that the simple service of a cease harassment notice "based on case[]law and the statute in question, could not have violated Roussel's constitutional rights." *Young Reply* at 1. Sheriff Young observes that the notice only prohibits Mr. Roussel from engaging in a course of conduct "with the intent to harass, torment or threaten" Mr. Mayo. *Id.* at 1. As Mr. Roussel does not have a

15

constitutional right to harass, torment, or threaten Mr. Mayo, the Cease Harassment Notice could not, in the Sheriff's view, affect Mr. Roussel's free speech rights. *Id.* at 1-2.

Sheriff Young states next that Mr. Roussel has failed to adequately state a claim for retaliation. *Id.* at 2-4. Sheriff Young observes that Mr. Roussel cited two of the three elements to state a claim for First Amendment retaliation: (1) the plaintiff engaged in constitutionally protected conduct, and (2) the protected conduct must be a substantial or motivating factor. *Id.* at 2 (citing *Pl.'s Opp'n* at 13 (citing *Powell*, 391 F.3d at 17)). However, Sheriff Young says, Mr. Roussel failed to mention the third element—the plaintiff must be subjected to an adverse action. *Id.* (citing *Gattineri v. Town of Lynnfield, Mass.*, 58 F.4th 512, 515 (1st Cir. 2023)).

Sheriff Young maintains that the service of the Cease Harassment Notice cannot amount to an adverse action because to prove a violation of 17-A M.R.S. § 506-A, a person must harass, torment, or threaten another person only after he or she has received a cease harassment notice, and even then, only if the harassment is done "without reasonable cause." *Id.* Sheriff Young points to *State v. Cropley*, 544 A.2d 302, 305 (Me. 1988) as a case precisely on point.

## IV.   LEGAL STANDARDS

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other

words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the

defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

The Court has analyzed this motion to dismiss in a manner consistent with the constraints imposed by Federal Rule of Civil Procedure 12(b)(6) in that it has accepted the factual allegations in the amended complaint as true and assessed whether the alleged facts state a claim upon which relief may be granted.  The Court discusses each of Sheriff Young's contentions in turn.

### A.   Sheriff Young as a State Actor

Sheriff Young correctly states that to prove a case under 42 U.S.C. § 1983, the plaintiff must establish that a defendant was a "state actor."  *Macdonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 266 (D. Me. 2023) (quoting *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (quoting *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018))).  However, Sheriff Young's claim that he was not acting as a state actor when he served the Cease Harassment Notice on Mr. Roussel is elusive.

As Sheriff of Piscataquis County, Sheriff Young was potentially a governmental actor within the meaning of 42 U.S.C. § 1983.  *See Wood v. Hancock Cnty. Sheriff's Dep't*, 354 F.3d 57, 58 n.1 (1st Cir. 2003).  Moreover, Sheriff Young was serving Mr. Roussel with the Cease Harassment Notice pursuant to 17-A M.R.S. § 506-A, which expressly provides:

**1.**  A person is guilty of harassment if, without reasonable cause:

**A.** The person engages in any course of conduct with the intent to harass, torment or threaten another person:

> **(1)** After having been notified, in writing or otherwise, not to engage in such conduct by:
>> **(a)** <u>Any sheriff</u>, deputy sheriff, constable, police officer or justice of the peace. The notification not to engage in such conduct expires one year from the date of issuance. . . .

17-A M.R.S. § 506-A(1)(A)(1)(a) (emphasis supplied).  Thus, Sheriff Young was acting pursuant to his statutory authority when he served Mr. Roussel with the Cease Harassment Notice.

Accepting the allegations in the complaint, Manager Mayo, using governmental email, extracted a favor from a fellow governmental employee, Sheriff Young, to serve a Cease Harassment Notice on Mr. Roussel to retaliate against Mr. Roussel because Mr. Roussel was annoying Manager Mayo.  *See Second Am. Compl.* ¶¶ 77-87.  Even if Manager Mayo were not a governmental employee, as Sheriff Young suggests, *see Young Mot. to Dismiss* at 4, if Sheriff Young misused his governmental office at the behest of a purely private citizen to chill the First Amendment rights of a third person by serving a frivolous Cease Harassment Notice, the allegation would be sufficient to state a claim that Sheriff Young was acting as a state actor when doing so.  *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 16 (1st Cir. 2011) ("Government actors offend the First Amendment when they retaliate against an individual for constitutionally protected speech").

## B.    The Cease Harassment Notice

Sheriff Young's second point is more substantive.  Sheriff Young asserts that the service of a cease harassment notice is essentially a legal nullity because it only warns the recipient not to do something illegal in the future.  Moreover, as no one has

the constitutional right to harass someone else, Sheriff Young claims all the Cease Harassment Notice did was warn Mr. Roussel not to engage in unprotected speech by harassing Mr. Mayo.

The Court accepts Sheriff Young's point that 17-A M.R.S. § 506-A is not intended to proscribe speech protected by the First Amendment. *See Childs v. Ballou*, 2016 ME 142, ¶ 17, 148 A.3d 291 (stating that "conduct amounting to criminal harassment" is not protected by the First Amendment); *State v. Copley*, 544 A.2d 302, 304 (Me. 1988) ("[W]e conclude that the conduct proscribed by the harassment statue fits within the area of unprotected speech").   But this point begs the question presented by this lawsuit: whether Mr. Roussel's speech in Piscataquis County was protected under the First Amendment in the first place.   Mr. Roussel contends that his speech was not harassment, and instead was protected speech, and by serving him with the Cease Harassment Notice, Sheriff Young took the contrary position that Mr. Roussel's "course of conduct," both past and potentially future, under 17-A M.R.S. § 506-A(1)(A) was unprotected speech.

Once served with the warning, if Mr. Roussel wished to be certain to avoid criminal prosecution under 17-A M.R.S. § 506-A, his one option was to stay silent and remove his signs.   A violation of 17-A M.R.S. § 506-A is a Class E crime and would subject Mr. Roussel to a period of incarceration up to six months, 17-A M.R.S. § 1252(2)(E), and a fine not to exceed $1,000, 17-A M.R.S. § 1301(1)(E).   If Mr. Roussel's speech in Piscataquis County was protected speech under the First Amendment, a question the Court does not resolve but assumes is true in accordance with Rule

20

12(b)(6), it follows that a government official's attempt to silence his protected speech on pain of criminal prosecution potentially runs afoul of 42 U.S.C. § 1983. *See Gonzalez-Droz*, 660 F.3d at 16.

It is true that if he ignored the Cease Harassment Notice and continued to speak out and the state of Maine pressed a criminal charge against him for violating 17-A M.R.S. § 506-A, Mr. Roussel could have defended the charge on the ground that he had "reasonable cause" to speak or that by speaking he did not intend to "harass, torment or threaten" Mr. Mayo. But the First Amendment of the United States Constitution does not require citizens to run the risk of conviction, fine, and imprisonment to exercise the right to free speech.

Sheriff Young cites *Burrell* as rejecting a claim that a cease and desist notice deprived a plaintiff of a constitutional right. *Young Mot. to Dismiss* at 5 (citing *Burrell*, 2000 U.S. Dist. LEXIS 2412). As accurately quoted by Sheriff Young, in *Burrell*, the Magistrate Judge wrote, "Plaintiff's assertion notwithstanding, the Court fails to discern how any constitutional violation occurred when the officer served Plaintiff with a cease harassment notice." *Id.* (*Burrell*, 2000 U.S. Dist. LEXIS 2412, at *23). But the facts in *Burrell* were markedly different from the facts here. In *Burrell*, a pro se plaintiff was a student at the University of Southern Maine (USM) and got into a dispute with Student Legal Services (SLS) there. *Id.* at *5-13. Heather Monroe, a fellow student and the Coordinator of SLS, had suspended the plaintiff, Mr. Burrell, from his position as an intern at SLS. *Id.* at *6, 8-9. Mr. Burrell complained to the Student Senate about his suspension, and the Student Senate

undertook an investigation and imposed a sanction on Mr. Burrell.  *Id.* at *10.  After the Student Senate action, USM police officer James Stanhope served Mr. Burrell with a cease harassment notice on behalf of Ms. Monroe.  The notice states "that Monroe filed a complaint alleging that [Mr. Burrell] had been sitting outside SLS offices watching Monroe as she worked and stood outside the Student Senate office while Monroe worked inside."  *Id.* at *12.

In her recommended decision, as noted above, the magistrate judge properly concluded that there was no constitutional violation being alleged.  Mr. Burrell was not claiming that he had a constitutional right to sit outside Ms. Monroe's office and watch her while she worked or to stand outside her other office while she worked inside.  This contrasts markedly with the allegations in this case where Mr. Roussel is claiming that the Cease Harassment Notice was designed to chill his protected speech right to post signs and otherwise express how he feels toward a government official.

As the Maine Supreme Judicial Court wrote in *Childs*, "[i]t is the fact-finder who properly determines whether a true threat or harassment has occurred."  2016 ME 142, ¶ 17.  It is not this Court that properly resolves this factual issue on a motion to dismiss, where the allegations in the complaint are assumed to be true and the facts have not otherwise been properly developed.

## VI.    CONCLUSION

The Court DISMISSES Defendant Robert Young's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 45).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2024