UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH ROUSSEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:22-cv-00285 |
| | ) |
| WILLIAM MAYO, et al., | ) |
| | ) |
| Defendants. | ) |

# DEFENDANT ROBERT YOUNG'S STATEMENT OF MATERIAL FACTS

1. The Plaintiff, Joseph Roussel, is a resident of the town of Orrington, which is located in Penobscot County, Maine. ECF No. 42 at ¶ 5.

2. Defendant William Mayo is the Town Manager of the City of Old Town, which is also located in Penobscot County, Maine. *Id.* at ¶ 6.

3. Defendant Robert Young is the Sheriff of Piscataquis County, Maine. Young Depo. at 4:15-16.

4. Defendant Mayo owns a home on Schoodic Lake, which is located in the municipality of Lakeview Planation in Piscataquis County. ECF No. 42 at ¶ 61.

5. Roussel and Mayo engaged in an argument during a telephone call in October 2021 concerning COVID precautions at the Old Town City Office, during which the two men "traded adult language insults" at each other. ECF No. 42 at ¶¶ 14-20.

6. On June 25, 2022, Roussel was on a boat on Schoodic Lake with friends. Roussel Dep. at 29:19-24; 32:1-12. One of Roussel's friends pointed out Mayo's home on the lake shore.

*Id.* at 29:25; 30:1-4. Roussel then suddenly yelled out at Mayo from the boat, shouting "Fuck you! Try trespassing me from here you tyrant piece of shit!" *Id..* at 32:1-22; Roussel Interrogatory Answer No. 19 at p. 8.

7. On July 3, 2022, Roussel posted at least five signs along Railroad Bed Road and Hancock Road in Lakeview Plantation near Mayo's home. Roussel Dep. at 39:18-25; 40:6-25; Exhibit # 11.

8. Roussel testified that he thought Railroad Bed Road was a public road "according to the town and the registry [of deeds]." Roussel Dep. at 55:18-25.

9. Roussel also testified that his understanding of the documents from the registry of deeds was "limited." Roussel Dep. 56-1-2.

10. Roussel testified that "Hancock Road is "privately owned but accessible to the public," before adding a caveat that this was "from what [he] understand[s]." Roussel Dep. at 55:5-15.

11. Railroad Bed Road has always been held in private ownership. Exhibit #16, Affidavit of Christopher Pazar, Esq. ("Pazar Aff.") at ¶ 11.

12. At no time has Lakeview Plantation owned fee title or held any public easement rights in Railroad Bed Road, nor has it accepted Railroad Bed Road as a public way. Exhibit #16, Pazar Aff. at ¶ 12.

13. Neither Piscataquis County nor the State of Maine has ever held a title interest in Railroad Bed Road nor accepted it as a public way. Exhibit #16, Pazar Aff. at ¶ 13.

14. Joseph Roussel never held private rights in Railroad Bed Road nor owned property benefitted by any private rights in Railroad Bed Road. Exhibit #16, Pazar Aff. at ¶ 14.

15. Hancock Road has always been held in private ownership. Exhibit #16, Pazar Aff. at ¶ 17.

16. At no time has Lakeview Plantation owned fee title or held any public easement rights in Hancock Road, nor has it accepted Hancock Road as public way. Exhibit #16, Pazar Aff. at ¶ 18.

17. Neither Piscataquis County nor the State of Maine has ever held a title interest in Hancock Road nor accepted it as a public way. Exhibit #16, Pazar Aff. at ¶ 19.

18. Joseph Roussel never held private rights in Hancock Road nor owned property benefitted by any private rights in Hancock Road. Exhibit #16, Pazar Aff. at ¶ 20.

19. One of the signs that Roussel made and posted said, "FUCK YOU WILLIAM MAYO." Exhibit #1. Roussel cannot remember precisely where he posted this sign other than that it was on either Railroad Bed Road or Hancock Road. *Id.* at 48:21-24; 40:6-25.

20. One of the signs that Roussel made and posted said, "WILLIAM MAYO HATES FREE SPEECH RIGHTS AND LAWS MATTER MORE THAN YOUR FEELINGS SUCK IT." Exhibit #2. Roussel posted this sign on a utility pole in Lakeview Plantation "at the head of the road directly across the Railroad Bed Road on the far side of the Railroad Bed Road from Sunrise Point Road." Roussel Dep. at 46:1-7; Exhibit #4.

21. One of the signs that Roussel made and posted said, "SOMETIMES WHEN YOUR [sic] A TYRANT AT WORK THEY FIGURE OUT WHERE YOU LIVE AND SCOTT WILCOX CANT [sic] HELP." Exhibit #3. Roussel cannot remember precisely where he posted it. Roussel Dep. at 46:20-25; 47:1-6. He believes he may have posted it along Hancock Road. *Id.* at 47:15-24.

22. One of the signs that Roussel made and posted sign said, "WILLIAM MAYO SUPPORTS BIDEN, ANOTHER SHIT BAG THAT HATES FREEDOM. THE CONSTITUTION

MATTERS MORE THAN YOUR LIMP DICK." Exhibit #5. Roussel cannot remember precisely where he posted it other than that it was on either Railroad Bed Road or Hancock Road. Roussel Dep. at 46:8-19; 40:6-25.

23. One of the signs that Roussel made and posted said, "FREEDOM OF SPEECH MATTERS MOST WHEN YOU DON'T LIKE IT. FUCK YOU WILLIAM MAYO EAT A BAG OF DICKS." Exhibit #6. Roussel cannot remember precisely where he posted it, other than that it was on either Railroad Bed Road or Hancock Road. *Id.* at 40:6-25; 50:15-17; 51:1-6.

24. Roussel stated that "the area where I put up my sign is littered with signs of all kinds, political, matters of public safety and directions." Exhibit #20 (Plaintiff's Motion for Continuance, ECF No. 26) at p. 2.

25. Roussel attached multiple photographs to a Motion for Continuance that he filed on March 7, 2023. Seven of these photographs depict roads signs in the area where Roussel posted his signs. Exhibit # 8-14 (ECF No. 26-3 pp. 1-7); Exhibit #21 (Plaintiff's Interrogatory Answers at p. 7, ¶ 17).

26. The photos depict a rural landscape with no sidewalks, no businesses, and no public accommodations. Exhibit #8-14.

27. One of the photos that Roussel attached to his Motion for Continuance depicts a Trump/Pence sign atop a boulder, to which is affixed a metal chain and block letters that say "Hesseltines." Exhibit # 9.

28. Roussel testified that his friends Patty and Dan Hesseltine posted the Trump/Pence sign "at the top of the driveway." Roussel Dep. at 53:9-16.

29. Roussel also testified that "this is the Hesseltines' driveway" and that "the Hesseltines posted this on their own property." Roussel Dep. at 53:15-19.

30. Roussel then contradicted himself a moment later to say that that the sign was not on the driveway, but "technically in the road." Roussel Dep. at 53:21-23.

31. Roussel's testimony contains no explanation for how his statements concerning the ownership of Railroad Bed Road or Hancock Road are rationally based on his own perception. *See* Roussel Dep. 55:5-15; 56-1-2.

32. The Hesseltines live on Railroad Bed Road. Roussel Dep. at 53:21-23.

33. Roussel posted his signs near the Mayo residence by attaching them to Versant utility poles and trees. Roussel Dep. at 40:9-25; ECF No. 42 at ¶¶ 67, 75.

34. Roussel admits that the signs that he posted by Mayo's residence in Lakeview Plantation were "directed toward" Mayo, specifically. Exhibit # 20 at p. 12, ¶ 64; Roussel Dep. at 40:9-25.

35. Roussel also testified that in addition to the signs he posted by Mayo's residence, he made more signs containing messages that he "had intended to express *to Mr. Mayo*." Roussel Dep. at 72: 13-17 (emphasis added). *See also,* Roussel Dep. at 100: 12-17.

36. Roussel alleges that after he posted the signs, Mayo sent him an email in which Mayo erroneously stated that the roads where Roussel posted the signs were private. Exhibit # 20 at ¶¶ 77, 79.

37. Roussel was served with a cease harassment warning on July 14, 2022, by a Piscataquis County Deputy Sheriff. Exhibit # 18.

38. The cease harassment warning that Roussel received cites Maine's criminal harassment statute, 17-A M.R.S. § 506-A, and states that "You are forbidden from engaging, without reasonable cause, in any course of conduct with the intent to harass, torment or threaten the following person: William Bill Mayo." Exhibit # 17.

39. When he served the cease harassment notice, Roussel claims that Young told him that "his justification for issuing [it] was that he considers what the people who go to his church think when he enforces the law, not the First Amendment," asserted that Roussel had trespassing on the dirt road, and that he (Young) would enforce the cease harassment notice if Roussel returned to the area. Id. at ¶ ¶ 85, 87.

40. Young believed that Railroad Bed Road is a private road based on his experience working in the area over the course of years. Young Dep. at 30:7-14.

41. Young understood that Roussel had posted signs along a private camp road "going off the Railroad Bed Road into his camp." Young Depo. at 22:23-25; 23:1-13. (Sunset or Sunrise Road. *Id.* at 35:18-22.

42. Young understood that Roussel posted his signs on a private road "leading to [Mayo's] house." *Id.* at 29:21-25; 30:1-6.

43. When asked whether he knew where certain signs were posted in relation to property owned by William Mayo, Young replied that he did not "other than it was given to me as signs posted on his private road, on the private road that he utilizes." Young Dep. at 35:16-20.

44. Young believed that Roussel only had a right to use Railroad Bed Road if he was invited to use it and that, even if invited to use the road, Roussel had no right to harass anyone. Young Dep. at 27:7-25; 28:1-2.

45. Young believed that Roussel had already violated 17-A § 501-A by accosting Mayo from a boat on Schoodic Lake and directing obscenities at him. Young Dep. at 25:6-25; 26:1.

46. Young understood that "generally disorderly conduct requires a warning and I felt that issuing the cease from harassment order constituted part of that warning." Young Dep. at 26:12-15.

47. Young does not know if Sgt. Dow or Chief Deputy Todd Lyford personally know Bill Mayo nor whether Dow or Lyford talked to Mayo about the July 3rd incident. Young Dep. at 28:7-18.

48. Young did not know Bill Mayo before July 2022. Young Dep. at 28:3-6.

49. Young characterizes the July 3 incident on Schoodic Lake as Mayo and Roussel being each other's presence. *Id.* at 31:11-13.

50. Young believed that a sign containing the word "fuck" was posted on Mayo's camp road. Young Dep. at 31:21-25; 32:1-3; Exhibit # 4.

51. Young does not believe that the use of the word "fuck" is absolutely protected by the First Amendment. Young Dep. at 32:2-6.

52. Young believes that Roussel's sign stating "FUCK YOU, WILLIAM MAYO" could be a violation of 17-A M.R.S. § 501-A. Young Dep. at 34:20-22; Exhibit # 4.

53. Young believes that words that would constitute disorderly conduct include words that "in a public or private place . . .insults, taunts or challenges any person with offensive, derisive, or annoying words." Young Dep. at 34:11-19 (quoting 17-A M.R.S. § 501-A).

54. Young believed that Roussel used "offensive, derisive, or annoying" language in violation of § 501-A when he posted sign stating, in part "THE CONSTITUTION MATTERS MORE THAN YOUR LIMP DICK." Young Dep. at 36:7-25; 37:1-4; Exhibit # 7.

55. Young believed that a sign calling someone by name and referring to their genitals (i.e., "limp dick") when posted on that person's private property, could be considered harassment as well as disorderly conduct. Young Dep. at 36:22-25; 37:1-5; Exhibit #7.

56. Young did not believe that one sign stating "WILLIAM MAYO HATES FREE SPEECH RIGHTS AND LAWS MATTER MORE THAN YOUR FEELINGS SUCK IT" warranted a summons. Young Depo. at 36:4-6; Exhibit # 5.

57. Young did not issue a summons to Roussel for violating the disorderly conduct statute, nor did he issue any other type of summons; he issued a cease harassment warning. Exhibit # 17.

58. Roussel called Young on the telephone in July 2022, approximately one month after he was served with the cease harassment notice. Roussel Dep. at 75:10-20.

59. Young told Roussel that the First Amendment is not an absolute right and that he believed that Roussel had overstepped a boundary and that his signs were not protected by the First Amendment because of the nature of the language they contained, the fact that Roussel went onto private property to post the signs, and the fact that he hollered obscenities at Mayo from the boat on Schoodic Lake. Young Dep. at 43:3-25; 44:1-11.

60. Young believed that Roussel's sign stating that "Sometimes When Your [sic] A Tyrant At Work They Figure Out Where You Live and Scott Wilcox Can't Help" could be perceived as a threat. Young Dep. at 39:3-17; 39:21-23 Exhibit #8.

61. Young did not consider sending this matter to the District Attorney's office. Young Dep. at 42:6-7.

62. Young never issued a no trespass order to Roussel. Young Dep. at 47:14-16.

63. Young is not aware of anyone else issuing a no trespass order to Roussel. Young Dep. at 47:17-19.

64. Young did not tell Roussel that he would be issued a summons for harassment if he returned to Lakeview Plantation. Young Dep. at 47:20-25.

65. It was not Young's intent to keep the cease harassment notice active in order to have Roussel arrested or issued a summons if he returned to Lakeview Plantation. Young Dep. at 48:1-12.

66. A cease harassment order is a warning; the next step would not be to arrest a person who received a cease harassment order, but instead for the person being harassed to obtain a protection from harassment order. Young Dep. at 48:4-9.

67. The Piscataquis County Sheriff's Office does not issue summons except in rare cases on harassment orders that the police issue. Young Dep. at 48:9-12.

68. Defendant Scott Wilcox was the Old Town Chief of Police during the events at issue in this case. ECF No. 42 at ¶ 8.

69. The October 2021 argument between Roussel and Mayo culminated with officers of the Old Town Police Department issuing a criminal trespass warning to Roussel directing him not to enter the Old Town City Hall. ECF No. 42 at ¶ 22.

70. Mayo was standing outside of his house and heard Roussel shout an expletive at him from approximately 30 feet away on Schoodic Lake. Mayo Dep. 25:18-25; 26:1-25; 28:21-25.

71. Rousell contends that the cease harassment notice constituted a prior restraint of his right to access public property as well as his First Amendment rights and was also an act of First Amendment retaliation. ECF No. 42 at ¶¶ 83, 84.

72. Roussel claims that the cease harassment notice infringed his fundamental constitutional rights and "continues to chill" his First and Fourteenth Amendment rights. ECF No. 42 at ¶ 91.

73. Several road signs depicted in the photographs are directed specifically at all-terrain vehicles and snowmobiles and explicitly state that use of the road is a "privilege." Exhibit # 12 ("ATVs PLEASE SLOW DOWN OR LOSE THE PRIVILEGE OF USING THIS ROAD").

74. Roussel alleges that Young "upheld . . . a verbal trespass from Mr. Mayo" and told him "not to go back out there," referring to Railroad Bed Road. Roussel Dep. at 70:7-15.

75. Roussel also alleges that Young told him that he "likes to think what the ladies at his -- has to or likes to consider what the ladies at his church think,: rather than the First Amendment. Roussel Dep. at 70:17-20.

76. Mayo estimates that Roussel came within 30 feet of his property while shouting obscenities at him from a boat on Schoodic Lake. Mayo Dep. at 27:19-21.

77. Roussel brings this action pursuant to 42 U.S.C. § 1983 and 5 M.R.S. § 4682, alleging a violation of his First Amendment rights and First Amendment retaliation.

78. Roussel is suing Young in both his individual and official capacities. ECF No. 42 at ¶ 11.

79. During Young's tenure as both Chief Deputy and Sheriff of Piscataquis County, he is aware of only one complaint about a person, Joseph Roussel, placing signs on or adjacent to a private road. Exhibit 15 (Young Affidavit).

80. To Young's knowledge, during his tenure as Chief Deputy and Sheriff of Piscataquis County, no person other than the Plaintiff in this case, Joseph Roussel, ever alleged that the Sheriff's Office violated their First Amendment rights by responding to their posting of signs on or adjacent to a public or private road. Exhibit 15 (Young Affidavit).

81. To Young's knowledge, during his tenure as both Chief Deputy and Sheriff of Piscataquis County, no person other than the Plaintiff in this case, Joseph Roussel, ever alleged that the Sheriff's Office engaged in First Amendment retaliation by responding to their posting of signs on or adjacent to a public or private road. Exhibit 15 (Young Affidavit).

82. To Young's knowledge, during his tenure as both Chief Deputy and Sheriff of Piscataquis County, the Sheriff's Office never received a complaint about a person posting signs on or adjacent to a public or private road, other than the complaint at issue in this case. Exhibit 15 (Young Affidavit).

83. The Piscataquis County Sheriff's Office has no written formal policy prohibiting people from posting signs on or adjacent to private or public roads, nor a written formal policy of responding to people placing signs on such roads. Exhibit 15 (Young Affidavit).

84. The Piscataquis County Sheriff's Office has no informal policy or practice of prohibiting people from posting of signs on or adjacent to public or private roads, nor an informal policy or practice of responding to people placing signs on such roads. Exhibit 15 (Young Affidavit).

Dated: January 31, 2025

/s/ Peter T. Marchesi
Peter T. Marchesi, Esq.
Wheeler & Arey, P.A.
Attorneys for Defendant Robert Young
27 Temple Street
Waterville, ME 04901

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH ROUSSEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:22-cv-00285 |
| | ) |
| WILLIAM MAYO, et al., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I, Peter T. Marchesi, hereby certify that:

● Statement of Material Facts of Defendant Robert Young

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Michael E. Saucier, Esq.    *msaucier@lokllc.com*
Frederick Costlow, Esq.    *fcostlow@rwlb.com*


Dated: January 31, 2022         /s/ Peter T. Marchesi
                                Peter T. Marchesi, Esq.
                                Wheeler & Arey, P.A.
                                Attorneys for Defendant Robert Young
                                27 Temple Street
                                Waterville, ME 04901